## ANNE WARD v. LUCY E. WHITFIELD.

1. CHANCERY JURISDICTION. *Bill of injunction. Money of defendant in hands of sheriff. Case in judgment.*

L. filed a bill in chancery, alleging that she held a judgment of the circuit court against A.; that execution had been issued on the same and a return of *nulla bona* made thereon; that A. is insolvent; that the sheriff of the county holds in his hands certain money belonging to A., and collected by him under process of the chancery court, and if the same is paid over to A., L. will be prevented from collecting her judgment. A. and the sheriff were made parties defendant to the bill. *Held,* that the bill warrants the interposition of a court of chancery to restrain the sheriff from paying over the money to A., and to subject the same to the payment of L.'s judgment.

2. SAME. *Return of "nulla bona" before return-day. Right of creditor to pursue equitable assets.*

And the fact that in such case the return of *"nulla bona"* was made some time before the return-day of the execution does not affect L.'s rights. If there was no property subject to the execution while it remained in the sheriff's hands, it is not to be presumed that the condition of the debtor would be changed before the return-day. A creditor is not bound to desist from an effort to subject the equitable assets of his debtor in the hope or expectation that he may by some chance thereafter acquire legal assets.

3. CHANCERY PRACTICE. *Amendment of bill without leave. Ratification by court.*
The refusal of a chancellor to strike out an amendment to a bill because leave to file the same was not first obtained is equivalent to having granted previous leave.

4. SAME. *Amended bill. Dismissal of original bill.*
Where an injunction is granted on an original bill which is defective, but is afterward so amended as to be cured of the defects, it is proper for the court to refuse to dismiss the original bill.

5. SAME. *Appeal from an interlocutory decree. When to be granted.*
Under ₹ 2311, Code of 1880, no appeal should be granted from an interlocutory decree (whereby no money is required to be paid nor the possession of property to be changed) except where the principles governing the cause may be settled by the appeal, or where the Chancellor doubts the correctness of his decision and costs and delay may be avoided by the appeal. Ordinarily the interests of parties will be advanced and justice more speedily and economically administered by proceeding to final decree. And unless the granting of unnecessary and unauthorized appeals be remedied by the lower courts, this court will apply the corrective of dismissing, *ex mero motu,* appeals improvidently granted.

APPEAL from the Chancery Court of Monroe County.

HON. BAXTER McFARLAND, Chancellor.

The case is sufficiently stated in the opinion of the court.

*Houston & Reynolds* and *Sykes & Bristow,* for the appellant.

1. The object of *this* bill is not to subject a *decree* in which Anne Ward has an interest, a mere *right* or *chose in action,* but *five hundred and seventy-five dollars in actual "money"* belonging to Mrs. Ward in the sheriff's hands. In the case of *Whitfield* v. *Ward et al.,* MS. opinion, the only thing the sheriff had was an *execution on a decree*—a mere *right in action.* On *July* 5, 1886, that chose in *action* became a chose in *possession.* It was *legal* assets subject both to *execution* and *garnishment,* when the bill in the case at bar was filed, and by the easiest process in the world could have been subjected if liable to complainant's judgment. The bill, it is true, does state that the money was *levied* on (showing that counsel for complainant recognized the necessity of exhausting legal remedies), but the record referred to as part of the bill in this cause shows that *no levy was ever made.* But even if there was a

*levy,* and it proved fruitless, there remained *garnishment*—an exclusively *legal* remedy. *Folker* v. *Hayden,* 7 Cush. 125; *Echols* v. *Hammond,* 1 George 177 ; *Freeman* v. *Guion,* 11 S. & M. 58.

Complainant must *exhaust* her legal remedies.

2. Complainant's counsel argued in the case below, and the Chancellor plainly intimated in his opinion, that an *averment* of the *insolvency* of the judgment-debtor was sufficient to give chancery jurisdiction. Neither counsel nor Chancellor made the distinction between cases where the complainant's demand is a *legal* one, and the bill is filed to subject *equitable assets* to its satisfaction, and cases where the demand is *equitable,* or where equity has *jurisdiction in the first place,* as in case of *trust, fraud,* etc. *Every case* cited by counsel for complainant was of the latter character. If there is one question that is settled everywhere (except where changed by statute) it is that to subject equitable assets, like *choses in action,* to a *legal* claim, the claim must be reduced to judgment, *fi. fa.* issued, and returned *nulla bona.* The legal remedy must be *completely exhausted. Whitfield* v. *Ward,* Opinion Book ; *Farned* v. *Harris,* 11 S. & M. 366 ; *Hilzheim* v. *Drane,* 10 Ib. 556 ; *Brown* v. *Bank,* 31 Miss. 454; *Darcy* v. *Lake,* 46 Ib. 109 ; *Porter* v. *Matthews,* 53 Ib. 141 ; *Fleming* v. *Grafton,* 54 Ib. 79 ; *Pulliam* v. *Taylor,* 50 Ib. 551; *Irwin* v. *Lewis,* 50 Ib. 363 ; *Prewitt* v. *Land,* 36 Ib. 495 ; *Heirs* v. *Kimball,* 58 Am. Dec. 638 ; *Perry* v. *Hixon,* 1 Hill S. C. Ch. 229 ; *Scriven* v. *Botswick,* 2 McCord 415 ; *Kennedy* v. *Simons,* Dudley Ch. 144 ; *Brinkerhoff* v. *Brown,* 4 Johns. Ch. 675 ; *McDermot* v. *Strong,* 4 Ib. 691 ; *Spencer* v. *Cuyler,* 17 How. N. Y. 157 ; *Spencer* v. *Cuyler,* 9 Abb. 352 ; *Bull* v. *Clark,* 2 Met. 587, 8 B. Monroe 229.

And to *exhaust* the legal remedy by a *fi. fa.* the return of *nulla bona* cannot be made before the *last return-day*—in other words, the sheriff must hold the writ as long as he can, lest peradventure, *even at the last moment,* the resort to equity may be avoided by finding some legal assets. *Beck* v. *Burditt,* 1 Paige 305 ; *Cassidy* v. *Mecham,* 3 Ib. 311; *Williams* v. *Hogeboom,* 8 Ib. 469 ; *Williams* v. *Hubbard,* 1 Mich. 446 ; *Thayer* v. *Swift,* Harr. Mich. Ch. 429 ; *Stewart* v. *Stephens,* Ib. 169 ; *Williams* v. *Hubbard,* Walk. Mich.

Ch. 28 ; *Smith* v. *Thompson*, Ib. 1 ; *Beach* v. *Thompson*, Ib. 495 ; *Gould* v. *Tryon*, Ib. 353 ; *Drillon* v. *Rush*, 27 Mo. 243 ; *Roper* v. *McCook*, 7 Ala. 318 ; *Gordon* v. *Levell*, 21 Maine 251.

We specially commend to the court the reasoning of the court in *Smith* v. *Thompson*, Walk. Ch. 3 and 4.

It is simply unanswerable.

*Clifton & Eckford*, for the appellee.

1. As appellee charges in her bill that defendant is hopelessly insolvent, that upon her judgment execution was issued returned *nulla bona*, that she has exhausted her remedy at law, she has a right to come into a court of equity upon this state of facts if she has no other equity in her bill.   *Whitfield* v. *Ward*, MS. opinion.

2. To entitle a creditor to file his bill it is not necessary that the sheriff should have held up execution until return-day.   The most required is that the bill be not filed until after the return-day. Appellee did not file her bill until nearly two years after.   The authorities cited by appellant do not sustain his position.   The case cited by him of *Williams* v. *Hogeboom*, 8 Paige 469, decides that it matters not if the execution was returned before return-day if the bill was not filed until after the return-day.   In *Platt* v. *Caldwell*, 9 Paige 386, the court say after the return-day complainant has a right to think his remedy at law exhausted and to file his bill.   We are sustained in this position by the following authorities : *Williams* v. *Hogeboom*, 8 Paige 469 ; *Platt* v. *Caldwell*, 9 Paige 386 ; *Forbes* v. *Waller*, 25 N. Y. 436 ; *Renard* v. *O'Brien*, 35 N. Y. 102 ; *Bowen* v. *Parkhurst*, 24 Ill. 260 ; Bump on Fraud Con. 514, note 3 ; *Tapp* v. *Bond*, 57 Miss. 281 ; Murfree on Sheriffs, §§ 868, note 3, and 865.

The Michigan reports seem to be the only ones holding the converse.

Justice George held in the case of *Tapp* v. *Bond* that no good purpose could be subserved by the sheriff holding the execution when he had ascertained that the money could not be made.   This case is a notable example.   It is a matter of record that since 1878 there have been and are now judgments against Anne Ward amounting to over two thousand five hundred dollars unsatisfied

with executions of returns of *nulla bona,* and that she has been for
ten years past and is now notoriously and hopelessly insolvent, and
that all her creditors but appellee have abandoned efforts to collect
their debts. Then why the necessity of holding up the execution
until a return-day ?

*Q. O. Eckford,* of counsel for the appellee, argued the case
orally.

*Calhoon & Green,* on the same side.

It is true that in 1842 a Michigan chancellor held that a judg-
ment creditor could not go into equity to reach equitable assets on
a *nulla bona* return until after return-day. But in that case,
*Smith* v. *Thompson,* Walk. Chy. 1, there appeared no special
danger in waiting. Here there is ruin in waiting, and we say
that equity will intervene to prevent the irreparable injury of
delay.

It would require the decision of at least two hundred chancellors
to convince our unlearned minds that we ought not to have relief
in equity at any moment that we ascertain through the sheriff that
there is *then* nothing on which he could levy, and two thousand to
convince us that in such case, and where we show additionally that
there is the purpose to defraud us, and additionally, also, that
we must at last get into equity to *ascertain the leviable interest* of
our debtor in a fraud by accounting, and additionally, also, that
unless equity aids us we will be utterly defeated from ever collect-
ing our debt, that chancery will close its doors against us because
of the possibility that by return-day the debtor *might,* but against
all human reason, have something to levy on.

If we are wrong in this we shall remain wrong until we die, so
steeped in ignorance that light cannot break in on us.

See *Parish* v. *Lewis,* Freeman Chy. Rep. 306, in which case the
court says :

" If you wish to reach the *legal* assets of your debtor and to
*remove obstacles* which obstruct your course at law, it is sufficient
that you show a judgment creating a lien upon those assets, but if
you wish to reach equitable assets or other things not subject to
execution at law you must show that you have exhausted your

remedies at law by a return of an execution unsatisfied as the foundation of your right to come into this court."

Some courts have held that an allegation of insolvency is enough. 3 Com. Eq. 464, note 4, and this would seem reasonable. *That* is the thing to find out at last, and if it is a fact why wait until a sheriff says so?

Whether the money belongs to the class of either legal or equitable assets we wish equity to protect us by injunction, because if paid over our rights are destroyed, inasmuch as it is the design of our debtor, as we aver, to conceal it and unjustly refuse to apply it to the payment of our debt, and the sheriff will pay it over unless enjoined.

If the issuance of execution and its return *nulla bona* be essential, we have these facts and have exhausted our remedy at law.

COOPER, C. J., delivered the opinion of the court.

The appellee has a judgment at law against appellant on which execution has been issued and returned *nulla bona.*

The appellant and her daughter, May, obtained a joint decree against one O'Conner which has been executed, and there is in the hands of the sheriff a considerable sum of money made thereunder.

The appellee, for the purpose of subjecting this fund to the payment of her judgment, exhibited her bill against Mrs. Ward and the sheriff, and obtained an injunction restraining the officer from paying over the money until her claim should be determined. To this bill Miss Ward was not a party, nor was there any averment contained in it that Mrs. Ward was insolvent, or that there had been a return of *nulla bona* to the execution. On motion the injunction was dissolved, and from the decree of dissolution an appeal was taken to this court, when the decree was affirmed.

The complainant thereupon presented to one of the judges of this court her bill, styled an amended and supplemental bill, against Mrs. Ward and her daughter, May, charging insolvency of Mrs. Ward, and that the execution issued against her had been returned *nulla bona* before the filing of the original bill. There was no

other material difference from the first bill, and on it another injunction was granted.

The defendant, Anne Ward, moved the court to strike from the files the second bill, because it was an amended bill, filed without leave of court first had, and this being denied, she moved to strike out the words "amended and supplemental" in the stating portion of the bill. This was also refused ; whereupon she moved the court to finally dismiss the original bill, which motion was also denied. In this condition of the cause the defendant prayed and obtained an appeal in order that the principles of the case might be settled by this court.

The defendant then moved the court to dissolve the injunction, which was overruled, and from this decree she also prayed and obtained another appeal.

These appeals we have in two distinct records, but for the purpose of this examination we will consider them together.

We dispose of the errors assigned to the action of the lower court by the simple statement that what was done by the Chancellor, (except the granting of these appeals), meets our approval.

The amended bill was very properly retained. The fact that no precedent leave had been obtained did not preclude the Chancellor from afterward permitting it to be filed, and his refusal to strike it out was tantamount to leave to file it. It was proper to refuse to dismiss the bill originally filed. That and the amended bill disclosed one and the same purpose, and it would have been unjust to complainant, who is but seeking to compel an unwilling debtor to apply her estate to the payment of a just debt, to subject her to the annoyance and expense of defending an action upon her first injunction bond. It was not necessary for the sheriff to retain in his hands the execution against Mrs. Ward until the return-day. If there was no property subject to execution while it remained in his hands, there exists no presumption that the condition of the debtor would be changed before the return-day. A creditor is not bound to desist from an effort to subject the equitable assets of his debtor, in the hope or expectation that by some chance he may thereafter acquire legal assets.

The facts stated in the bill are sufficient to warrant the interposition of chancery.

We would have disposed of these appeals with a simple order of affirmance but for the opportunity afforded by them to again admonish chancellors, that appeals from interlocutory decrees ought not to be granted unless the principles of the case can be settled upon such appeals. In the progress of chancery proceedings very many interlocutory decrees are made, and it is but natural that parties should desire to avail themselves of every opportunity afforded for appeals. But the statute authorizing appeals from such decrees can have application only when the principles governing the cause may be settled by the appeal, or where the chancellor doubts the correctness of his conclusion, and costs and delay may be avoided by the appeal. It is not the purpose of the statute to afford appeals to this court merely because litigants are dissatisfied with such interlocutory decrees ; ordinarily, the interests of all parties will be advanced and justice more speedily and economically administered by proceeding to final decree.

Unless the evil of frequent appeals is removed by the action of the lower courts, this court will apply the corrective by dismissing *ex mero motu* appeals improvidently granted.

*Affirmed.*